UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JANINE S.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

24-CV-235-LJV
DECISION & ORDER

On March 18, 2024, the plaintiff, Janine S. ("Janine"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On June 17, 2024, Janine moved for judgment on the pleadings, Docket Item 4; on July 17, 2024, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on July 31, 2024, Janine replied, Docket Item 8.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Janine applied for Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow, this Court denies Janine's motion and grants the Commissioner's cross motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. THE ALJ'S DECISION

On March 23, 2023, the ALJ found that Janine had not been under a disability from January 4, 2021, through the date of the decision. *See* Docket Item 3 at 38. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a). *See id.* at 25–26.

At step one, the ALJ found that Janine had not engaged in substantial gainful activity since January 4, 2021, the alleged onset date. *Id.* at 26. At step two, the ALJ found that Janine suffered from four severe, medically determinable impairments: "ocular hypertension, diabetic retinopathy, diabetes mellitus[,] and degenerative disc disease." *Id.* at 27.

At step three, the ALJ found that Janine's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 30–31. More specifically, the ALJ found that Janine's impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 2.02 (loss of central visual acuity), or 11.14 (peripheral neuropathy). *See id.* at 31.

The ALJ then found that Janine had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §] 404.1567(b)" except that:

> [Janine can] occasionally climb stairs; occasionally climb ladders, ropes, and scaffolds; occasionally perform all of the postural maneuvers with occasional balance further defined as needing to avoid narrow, slippery[,] or erratic moving surfaces; and [she] must avoid hazards like dangerous machinery and unprotected heights.

*Id.*

At step four, the ALJ found that Janine could perform past relevant work as an administrative assistant clerk, insurance clerk, or insurance claims clerk. *Id.* at 37–38; *see Dictionary of Occupational Titles* 219.362-010, 1991 WL 671953 (Jan. 1, 2016); *id.* at 219.387-014, 1991 WL 671978 (Jan. 1, 2016); *id.* at 241.362-010, 1991 WL 672250 (Jan. 1, 2016). The ALJ therefore found that Janine had not been under a disability from the alleged onset date through the date of the decision. *See* Docket Item 3 at 38; *see also id.* at 25–26.

## II. ALLEGATIONS

Janine argues that the ALJ erred in two ways. *See* Docket Item 4-1 at 10–16. First, she argues that the ALJ erred at step two by finding her post-concussion syndrome ("PCS") to be non-severe. *Id.* at 10–13. Second, she argues that regardless of whether her PCS was severe or non-severe, the ALJ erred by failing to consider it at step four. *Id.* at 13–16. For the reasons that follow, this Court disagrees.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## III. ANALYSIS

### A. ALJ's Step-Two Determination

At step two of the disability determination, an ALJ must "consider[] whether [a] claimant has a severe impairment which significantly limits his [or her] physical or mental ability to do basic work activities." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified). In this regard, an ALJ "will generally conclude that [a claimant's] impairment[] is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ found Janine's PCS to be non-severe, explaining that the "evidence d[id] not tend to support [Janine's] allegations of a severe and/or disabling impairment, as it reflect[ed] no more than mild symptoms." *See* Docket Item 3 at 27, 29. Substantial evidence supported that finding.

To begin, the ALJ noted that the concussion about which Janine complains "occurred in July 2020, but she [did] not allege[] disability until January 2021, which coincide[d] with when she stopped working" after being "fired from her job because of an allegation made against her by a client of her employer." *Id.* at 29. In fact, as the ALJ observed, Janine "looked for work, filled applications, and interviewed for jobs after her termination[,] suggesting that [her] alleged onset date ha[d] little to do with alleged cognitive and hand tremor limitations preventing her from working." *Id.*; *see also id.* at 51–52 (hearing testimony). So as the ALJ concluded, *see id.* at 29, Janine's fall and concussion did not seem to affect her ability to work or to look for work—at least in the half-year or so after she fell.

The ALJ then considered various imaging and examination results, concluding that "the objective evidence fail[ed] to support [Janine's] testimony regarding the severity and resulting limitations from the [PCS] and degenerative encephalopathy impairments." *Id.* For example, the ALJ noted that "[a] brain MRI and EEG study showed mild findings that were otherwise considered unremarkable[,] and a repeat EEG in June 2022 revealed normal findings." *Id.* Likewise, the ALJ explained that "[n]eurological and physical examinations detail[ed] normal memory and comprehension, a MOCA score of 28/30 within normal limits, [and] inconsistent presence of hand tremor with one examination showing [that it] quickly and completely resolved with distraction." *Id.*

What is more, and as the ALJ noted later in the decision, *see id.* at 35–36, the opinion evidence supported the conclusion that Janine's PCS was not severe. For example, on August 24, 2021, Janine Ippolito, Psy.D., opined that Janine had no limitations in most areas of mental functioning and at most mild limitations in others. *Id.* at 554. In fact, Dr. Ippolito explicitly found that Janine's mental impairments were not "significant enough to interfere with [her] ability to function on a daily basis," *id.*, the very standard for finding an impairment to be non-severe, *see* 20 C.F.R. § 404.1520a(d)(1). And the ALJ found Dr. Ippolito's opinion—that Janine had at worst "mild limitations due to cognitive deficits" resulting from her concussion—to be persuasive because it was "consistent with benign mental status examinations . . . as well as neurological examinations demonstrating no deficits in memory or attention." *Id.* at 36.

The ALJ also considered the opinions of L. Dekeon, Ph.D., and J. May, Ph.D., both state agency psychiatric consultants. *See id.* at 30. Dr. Dekeon reviewed Janine's

medical records, including those related to her PCS, and opined that "the available evidence d[id] not establish any mental [medically determinable impairments]." *Id.* at 81. After later reviewing the records, Dr. May affirmed Dr. Dekeon's findings. *See id.* at 103. The ALJ found these opinions "persuasive," noting that they were "consistent with the medical record showing no mental health treatment, the consultative examination findings, and [Janine's] denials of psychiatric symptoms." *Id.* at 35. So the opinion evidence supported the conclusion that any sequelae from Janine's concussion were non-severe.

Janine argues that the ALJ erred by "discuss[ing] evidence that supported [Janine's PCS] being a severe impairment, [but] . . . f[inding] it non-severe." Docket Item 4-1 at 12. In this regard, Janine points to evidence that the ALJ cited and urges that, in her view, that evidence should result in a different conclusion. *See Id.* at 12–13. But "it is not enough for [Janine] . . . to argue that the evidence in the record could support her position." *Stephanie D. v. Comm'r of Soc. Sec.*, 2025 WL 2778306, at *3 (W.D.N.Y. Sept. 30, 2025) (citation modified). Rather, "[t]he substantial evidence standards means [that] once an ALJ finds facts, [the Court] can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[Substantial evidence] means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). In other words, Janine must show that "no reasonable factfinder could have reached the ALJ's conclusion." *Thomas S. v. Comm'r of Soc. Sec.*, 2021 WL

1293105, at *7 (W.D.N.Y. Apr. 7, 2021) (citing *Brault*, 683 F.3d at 448). And her argument does not clear that high bar.

In sum, Janine's "disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents [this Court] from reweighing it." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order). Because the ALJ's step-two determination was supported by substantial evidence—including and especially the opinions of Drs. Ippolito, Dekeon, and May—the ALJ did not err.

**B. ALJ's RFC Determination**

As just noted, at step two of the disability determination, the ALJ found that Janine's PCS was non-severe. *See* Docket Item 3 at 27. But that step-two finding was not the RFC assessment that step four requires. *See Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265, at *5 (W.D.N.Y. Sept. 28, 2021). At step four, an ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). In other words, while the analysis at step two labels impairments as severe or non-severe, the analysis at step four determines what a claimant can and cannot do in light of those impairments.

Because the step-two and step-four analyses differ, *see David Q. v. Comm'r of Soc. Sec.*, 2022 WL 806628, at *5 (W.D.N.Y. Mar. 17, 2022) ("[I]t is well-established that the step-two analysis is analytically distinct from the RFC analysis." (citation modified)), an ALJ must address all limitations—severe and non-severe—when determining a claimant's RFC, *see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("A[n] RFC determination must account for limitations imposed by both severe

and non[-]severe impairments."); *Felix S. v. Comm'r of Soc. Sec.*, 630 F. Supp. 3d 423, 428 (W.D.N.Y. 2022) ("Simply because the ALJ concluded that [the p]laintiff's . . . limitations were non-severe . . . does not relieve him of the duty to consider them in connection with assessing the RFC."). And the ALJ did precisely that here.

To begin, the ALJ explicitly noted that he "considered all of [Janine's] medically determinable impairments, including those that [we]re not severe, when assessing [her RFC]." Docket Item 3 at 30. As the Second Circuit has recognized, that statement alone may be sufficient to demonstrate that an ALJ has considered all of a claimant's impairments at step four. *See Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (finding no error where "the ALJ's decision ma[de] clear that he considered the 'combination of impairments' and the combined effect of 'all symptoms' in making his determination."). And regardless, it is evident that the ALJ indeed considered Janine's non-severe impairments at step four.

For example, as part of the step-four analysis, the ALJ acknowledged Janine's testimony that "since a fainting episode and fall in July 2020, she has developed memory problems, confusion, disorganization, trouble concentrating and focusing, hand tremors, and unsteadiness with gait imbalance." Docket Item 3 at 32. And the ALJ noted that Janine "reported post-concussion symptoms" at a September 2021 consultative examination. *Id.* at 34.

What is more, the ALJ explicitly considered the opinions of J. Koenig, M.D., and V. Baronos, M.D., each of which addressed Janine's PCS and supported the RFC. *See id.* at 36. Dr. Koenig reviewed records of Janine's treatment for PCS and concluded

that, notwithstanding that impairment, Janine could perform light work.[5] *See id.* at 83–87. Dr. Baronos later reviewed the record and reached similar conclusions. *See id.* at 105–09. The ALJ found those opinions "persuasive," explaining that they were "consistent with the overall evidence of record, including findings in diagnostic studies and physical examinations, . . . as well as [Janine's] treatment history[] and activities of daily living." *Id.* at 36.

In other words, the ALJ addressed Janine's PCS both at step two and at step four. And the ALJ explicitly addressed both severe and non-severe impairments when he formulated the RFC.

Janine argues that because the ALJ found her to have mild limitations in various areas of mental functioning, the ALJ was required to include at least some mental restrictions in the RFC. *See* Docket Item 4-1 at 14–15. But the regulations require only that an ALJ *consider* a claimant's non-severe mental impairments. *See Felix S.*, 630 F. Supp. 3d at 428. And if, as the ALJ explicitly found here, "additional limitations are not supported by the overall longitudinal evidence of record" despite mild impairments, *see* Docket Item 3 at 37, then the ALJ is not required to somehow create such limitations. Indeed, courts in this District and this Circuit repeatedly have held that when substantial evidence supports only mild limitations in mental functioning, an ALJ is not required to include mental restrictions in the RFC. *See Grace M. v. Comm'r of Soc. Sec.*, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) ("Even though mild limitations may cause

[5] The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,] . . . a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC."); *Katherine R. v. Comm'r of Soc. Sec.*, 2021 WL 5596416, at *6–7 (W.D.N.Y. Nov. 30, 2021) ("Where, as here, an ALJ's findings of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC."); *Crumedy v. Comm'r of Soc. Sec.*, 2017 WL 4480184, at *6 (N.D.N.Y. Oct. 6, 2017) ("[E]vidence that is present does not suggest that this impairment imposed more than [a] minimal effect on [the p]laintiff's functioning that would have needed to be accounted for in the RFC.").

Janine also argues that the ALJ erred by failing to explain why mental limitations were not included in the RFC. *See* Docket Item 4-1 at 14. But "[a]n ALJ does not have to state on the record every reason justifying a decision." *Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (quoting *Brault*, 683 F.3d at 448). Rather, so long as the ALJ's decision provides "an adequate basis for meaningful judicial review . . . and is supported by substantial evidence," there is no error. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). And that is precisely the case here.

In sum, the ALJ appropriately considered Janine's severe and non-severe impairments when formulating the RFC. Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the ALJ's decision was supported by substantial evidence. This Court will not second-guess it. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Janine's motion for judgment on the pleadings, Docket Item 4, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 7, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: September 17, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE